Boeing 777-8 Dreamliner KLM PH-BFG from Chicago to Amsterdam on flight KL868 on 20-11-2017. Good morning, Your Honors. My name is Jim Tucker. I'm representing the U.S. Equal Employment Opportunity Commission. I'd like to reserve five minutes for rebuttal. Thank you. An employer violates Title VII when it negligently responds to the existence of a sex-based hostile work environment, which it did or reasonably should have known, when it retaliates against its employees to complain of a hostile work environment, and when it permits its employees to retaliatory harass the victim of the harassment and the person who complained. On summary judgment, the Commission presented ample evidence that Kelly Miles, who's a strong, capable woman working in a traditionally male-dominated field, is a sheet metal mechanic who retrofits Apache helicopters, that she was subjected to all of this conduct by Boeing. For a five-year period, she was verbally and physically harassed because she's a woman. She endured hostile gender-based name-calling, interference with her work, and degrading sexualized physical conduct, among other things. And for the first four years of the conduct, Miles complained constantly, as she puts it in her deposition, but Boeing largely ignored her complaints or, in the alternative, chastised her for complaining. Mr. Tucker, one of the concerns that I have is what did the company know and when did it know it? Can you give me specific dates and complaints that Ms. Miles made to managers at Boeing that should have put her supervisors on notice that there was a hostile work environment that they needed to address? Yes, Your Honor. But to make a point, before I give that information, I just want to note this Court has recognized in the past that giving specific dates as far as when a particular harassment happened or not is not responsible whether or not the individual was or her complaints were satisfactory to put the employer on notice. If you'd like a citation, Your Honor. No. What I would like is an answer to the question. But the answer to the question is no. I don't want a discourse on the law. I'd like a specific factual answer. What does the record show? The record shows, Your Honor, that the harassment began in 1997, and Ms. Miles stated that she complained constantly about that harassment to her supervisors in the pre-mod unit. Her first supervisor. And let me ask you this. Yes, Your Honor. To her supervisor, and is to her supervisor, for purpose of law, notification from Boeing? Boeing has not contested that that would be sufficient under this case. Boeing has not presented any information that Ms. Miles' complaints were somehow defective under its policy or otherwise. So for purpose of this case, that issue has not been raised as a defense by Boeing, and it's conceded, I believe, for purpose of the commission. Again, but to get back to your question, Your Honor, again, in 1997, she testifies she began to complain constantly. First in Nunnemaker. So her complaints were every day starting in 1997? That's what her record, that's what deposition says. Who was her supervisor starting in 1997? Starting in 1997, she was in the first shift of pre-mod. That was Kevin Nunnemaker, the individual who responded either by ignoring her complaints or later calling her a troublemaker when she complained, and even on a few occasions or, excuse me, on one occasion referred to her as a fucking crybaby in the presence of a person. That happened, I believe, I don't have an exact date for that. I think that was maybe in 2000 or 2001. I think that was closer in time to her written complaint in June of 2001, but I can't tell you exactly when that date was. I don't believe that she testified to that. Counsel, the problem I'm having with the record, as apparently it was presented to the district court, is that it appeared to me that as soon as Boeing Management was aware that Ms. Miles had a problem, they commissioned an investigation and they took very specific and very direct disciplinary action against two employees, terminating one within a month or month and a half of her complaint and placing another one basically on administrative probation and with a warning that if it happened again, he would be terminated. What I'd like to know is what information did she supply that was sufficient to put management on that same level of notice prior to 2001? Well, again, Your Honor. Because, frankly, saying I constantly complained and nothing was done about it, in my judgment, does not establish a prima facie case. It needs to be specific enough so that I can conclude that there really is a contested issue of fact over the fact that the company knew and did nothing. Well, again, Your Honor, just to be clear, a theme that's been recurrent in the arguments this morning, and this was decided on summary judgment, and the commission has submitted a large body of evidence regarding what exactly was said and when it was said. Now, as far as what exactly was told when prior to her written complaints, and I'd like to talk about the written complaints as well because, again, the summary judgment record differs from your characterization of that complaint and the results by Boeing. But not only did she complain constantly to one supervisor about obnoxiousness, slander, messing with her work, please make it stop. She complained to a second supervisor, Lloyd Hatter, who Boeing contends in its brief wasn't even a supervisor and that she never complained. But, of course, the commission's evidence shows that he was a supervisor. When did she speak to Mr. Hatter? She didn't specify exactly again when she spoke. It's clear from her testimony that she testified that she did speak to him prior to March of 2001, and there's a suggestion that it may have been as early as 1998. But she did state that she complained to him about the fact that they were calling her names, that they thought she was a bitch, and that they were interfering with her work. And, again, he stood silent and did nothing. Now, the standard for an employer's response. Mr. Hatter acknowledged that he had a conversation with her, and when does he say that it happened? Mr. Hatter, I don't believe, had testimony to that effect. But he wasn't asked or he denied it? I'm not – honestly, Your Honor, I can't recall if he was not asked or if that record is – the testimony is in the record. But it's not, to my knowledge, part of the factual record here. What is part of the record is her complaint. All we know is from Ms. Miles' testimony that at some undetermined time, prior to the prior – oh, I'm sorry, every day, constantly, that she complained to Mr. Hatter. And you didn't ask Mr. Hatter about that on deposition? That was not asked. But, again, the record on summary judgment is what it is, Your Honor. We don't have that evidence, but we do have Ms. Miles' testimony. Did Mr. Hatter submit a declaration on behalf of the company? I'm not aware that he did, Your Honor. Summary judgment? Counsel for Boeing may be able to speak to that, but I'm not aware that he did. I'll ask. But, again, the point is that, as I stated earlier, this Court has recognized that you don't have to specify dates and times, especially when you state that the conduct is pervasive. And that's exactly what Miles is saying. When she's complaining constantly of this conduct, she's telling them that it's happening constantly, day in and day out, for four years prior to her written complaint. Now, getting to her written complaint, she complains about a number of things. Boeing resolves two of them, but not really, only one. At least, that's the evidence the Commission presented on summary judgment. After her written complaint, in which she complains of harassment, comma, Manny Cervantes' treatment of me, comma, the treatment of John Blow of me, comma, the treatment of John Byrd, comma, the helicopter shaking incident, and explains that, Boeing only does two things, Your Honor. Counsel, you're throwing a whole lot at us here, but let's back up. I apologize. There's a lot to throw. You say that Boeing resolved one of the complaints. Which complaint are you talking about? That's Manny Cervantes at that point. Of June 2001, she or Boeing investigated that complaint and fired him. It turned and reprimanded John Blow. Now, there's testimony from Ms. Miles. That's the second action that you say is not sufficient. I say it's not sufficient because Ms. Miles testified that after that counseling and that counseling was because he went telling another employee that she gives a good job, after the counseling, he continues to call her a bitch. He continues to harass her in the ways that have been done before. And then did she go back to the supervisor and say he's still doing it? She repeatedly returned to Boeing H.R. Her first attempt to report ongoing harassment and retaliation shortly after her written complaint, Boeing tells her, sorry, you filed a charge with the commission. We're not going to hear anything about your charge. We're not going to hear any ongoing future complaints. That's the version of the evidence the commission presented. Boeing has a different version on summary judgment. This should have been ruled on based on the commission's evidence. And again, that clearly fails to meet this Court's standard that the employer has to act with reasonable care in responding to complaints of discrimination. But again, from that point on, the harassment continued with Blow and with another group of individuals. Did the company take any other action in response to these constant complaints that she was making? The – again, I apologize for giving you a lot of information. This is a long timeline with a lot of events. But my understanding of the record is that the only thing that Mr. Nunnemaker did in response to Miles' complaints was, well, there were a few things that he did. One, he said on a couple occasions regarding, I believe, complaints about her toolbox being interfered with, that he talked to the guys. Of course, the conduct continued after he talked to the guys. We don't know what the content is of that. But it clearly didn't stop the harassment or prevent future harassment. Again, Mr. Nunnemaker is also someone who called her a troublemaker and other names in response to her complaints. Had or did nothing. In the written complaint, Boeing, again, investigated. And I should mention, there is a third component to the written complaint as far as Boeing's attempt at remedial response. That is, they investigated the contention that John Byrd had been taking Miles' tools and that that was part of the harassment. Boeing's conclusion, the tools aren't yours, so it's not a problem. Of course, Boeing ignores the fact that a reasonable juror could conclude that John Byrd is using the tools that Boeing owns to interfere with their work. Interference with work performance is. I read that testimony and it looked to me like the district court had made an evidentiary ruling that the testimony on which you are relying is not admissible because it is hearsay and speculation. Can you address the evidentiary basis? Because she does have to adduce admissible evidence in order to establish a premise. My understanding, Your Honor, and first of all, again, for purposes of summary judgment, the commission does not have to present admissible evidence at this point. It needs to present evidence that can be presented in an admissible form at trial. That's a longstanding established maxim. But setting that aside. I think I might have missed the semantic difference there. It's either admissible evidence that can be introduced at trial. It's evidence that can be introduced in admissible, inadmissible form at trial. So if, for example, Miles is stating, and there's, if there's, she had said something that she'd heard from someone else, that might be hearsay, but if that person contested at that point of trial, that could be presented at trial, and therefore we don't have a hearsay problem for summary judgment. But, yes. Yes. Yes, we are. And what I'd like to hear is admissible evidence. There is. Because as I understand it, the company investigated the toolbox incident and concluded that they couldn't tell from their investigation who was responsible for doing it. That was one toolbox incident. There are multiple. Your client thinks that it's Mr. Is it Blow? She believed it was Bird and Cervantes, actually. Okay. And what admissible evidence is there that a jury will be permitted to hear that Mr. Bird was responsible for messing up the toolbox, that the company knew about it and didn't adequately? Your Honor, the commission's obligation was not to present evidence that there was an identified person that Boeing found that committed this harassment. There is no such evidence, Your Honor. I can go round and round. The commission is no different from any other plaintiff. The commission or any plaintiff, Your Honor. The commission or any other plaintiff has to establish admissible evidence. And I'm, Your Honor, it is immaterial who it is. All I'm trying to get at here is what evidence you have that's admissible at trial. Your Honor, it is immaterial who it is that was or who did this toolbox, whether it was Bird or any other of her male employees. It's just dodging me. It's a very simple question. I'm not dodging you, Your Honor. But I'm not getting any kind of a simple answer, counsel. You are implying? Representative of the commission, you're an officer of the court. Tell me what the evidence is in the record that is admissible at trial. Your Honor, on this particular point that we're discussing, the evidence is that Miles had complained for an extended period of time about people messing with her tools, interfering with her work. She had complained to Nonemaker. She had complained to Hatter. She complained in writing finally, and she identified Bird on prior occasions. She complained specifically in writing about this. She did identify Bird. She testified that Bird was somebody who had taken her tools. Her tools had been found in Bird's toolbox previously after they had been taken. As far as the trashing of the tool cart, which is the incident you're talking about where we don't know who did it, we don't know who did it, Your Honor. We know that one of Miles's coworkers did it. We know that for four years she's been complaining about mistreatment by her coworkers and Boeing is doing nothing, Your Honor. In the matter of evidence law, will Ms. Miles be permitted to say, I thought it was Mr. Bird who was doing it? Is that admissible in evidence at trial? Whether she – I'm not – Your Honor, to be frank with you, I don't have an answer for that, whether she could say that or not. But whether or not that – that component is irrelevant to whether or not the jury could conclude that that conduct was targeted at Miles based on her sex and was part of the body of harassment that her coworkers have perpetrated. Okay. You say it was targeted at Miles, but didn't the record show that there were other people besides Ms. Miles that used and relied on the toolbox? Again, just as Boeing did in this brief, Your Honor, and just as the district court did, there is a key component of evidence here, the commission's evidence, that's being ignored, and that is the fact that Miles testified, and it was uncontested, that when she used the toolbox, she had to sign out the toolbox. She was responsible for its custody. She would be responsible for its contents. Now, Boeing stated she never was disciplined for anything being taken. True. But she was still responsible for its contents. As soon as the responsibility of her taking the toolbox shifted from her to a male coworker, at that moment, all of the monkeying with the toolbox ended. I thought I read in the papers that the – there was another male employee who was also affected by the toolbox being missed. There was another male employee who used tools out of the toolbox. There is no testimony or otherwise that that male employee was ever impacted by the disruption with the toolbox. What is testified to is Miles' – Your Honor, they may be using different tools. A reasonable jury could conclude based on the lack of any evidence about that. It's the same toolbox. That's all I'm asking. I thought I read in the record that more than Ms. Miles used the toolbox. You did, Your Honor. One person, though, is the person who is responsible for the toolbox. And during the period in question, that person was Miles. Okay. But would others be impacted if the toolbox was messed up? Others may or may not have. There's no evidence that Boeing put in the record that others were impacted. But there's plenty of evidence put in the record by the commission as plaintiff that Miles was impacted by that. It disrupted her work performance between the tools or the fasteners or whatnot. There's also plenty of evidence that all of this was based on sex, not only from the comments that we've heard about that were directed at her, but other comments outside of her presence even more harsh. And I think the Court can refer to my briefs for those. Isn't your argument that this incident, that incident, the other incident, this can be explained, that can be explained. We don't know who did this. We don't know. But you take it all together, and she is experiencing the definition of a hostile environment. She feels intimidated each and every day. Absolutely, Your Honor. That she's in distress each and every day to the point that she is affected in her work, and it's miserable for her to work there. It's the classic case of a woman stepping in. And she said a lot about that. Now, what is the evidence that the management of Boeing at what levels knew about this? Well, again, Your Honor, the evidence is that her immediate supervisors were put aware, for the reasons I've already given to Judge Tallman, the evidence regarding her complaints that began orally from as early as 1997 and continuing throughout her employment, as well as her written complaints beginning in June of 2001. And, again, there was more than just her one complaint where she made and they told her that, of course, afterwards the complaint was going all the way to the top, and she'd make a lot of enemies, and they refused to talk to her after that. Okay. Now, the district judge, take the answer where she went to human resources. She tested her perception was she received a hostile reception there. However, the district court said, well, it was just once the EOC was in it, they couldn't talk to her or try to help her. Now, can you comment on that one? Well, let me speak to that, Your Honor. First of all, the district court made, as it did often in this decision, a finding in favor of Boeing on contested evidence on that point. The evidence on that point is that when Miles complained in writing and she filed a charge with the commission, Boeing responded. When she came back a few days later to ask why it was that they hadn't contacted her yet to investigate. She went in personally and talked to the judge. She went in personally. I read the record and talked to the judge. And she wanted to report more harassment and retaliation since she was now suffering because the word had gotten out that she had made this complaint. The response was, as she testified, she was told, you've gone to the EOC now. They're your advocate. We're not going to talk to you about your charge and we are not going to take further complaints from you. Now, the authority that Boeing relied on, the district court relied on, New York City Transit, a case from the Second Circuit, for this reasonable defensive measures argument, is completely distinguishable and does not fit this factual scenario. New York City Transit involves an employer who decided amongst one of two internal mechanisms that it had to process its own complaint or complaints against it. It did not involve a harassment complaint. It did not involve a situation where there was ongoing harassment. So in that sense, that case is distinguishable, but we don't even need to get to that point, Your Honor, if the evidence is looked at properly, because the evidence, as the commission presented it, doesn't fit Boeing's argument. And Boeing hasn't even tried to fit that argument into the version that Miles presented regarding that scenario. I'm sorry. I'm trying to throw out a lot of information. Well, it's a case that's got a lot of information. It certainly does. It certainly does. But one thing that perhaps you're overlooking is, as I understood your brief, and you're presenting a big picture that you can't – a jigsaw puzzle, you take this piece and explain it to that piece. But when you put all the pieces together, you've got a picture of a hostile environment. That's clear, set of law. National Railroad v. Morgan Supreme Court's most recent speech on that. I know. That's your basic argument rather than these various – all these various incidents. That's correct. Which is going on all the time. That's right. That's why she went to several supervisors, including up to the – somebody in human resources. How high was that individual? I'm not – you know, I'm not sure if it was the director of EEO or if it was someone – there were two people. There was someone in their internal EEO office and someone in their HR. Dick Clark and I think Dick Mead might have also been the other person. I'm not sure. Those are the two folks who she contacted and they had different responses to her. If I could reserve the 45 seconds I have left, Your Honors. You've got 45 seconds, but as we're doing generally, we'll make sure you have a chance to respond. I appreciate that. Thank you. Good morning, Your Honors. Let me start by addressing – If you could just do the formulaic phrase, may it please the Court, my name is. I'm very sorry, Your Honor. That's okay. May it please the Court, my name is Erica Rokish. I'm here on behalf of the Boeing Company. Thank you. One of the issues that I think was you – the Court was alluding to in addressing Mr. Tucker is one of the main issues that Boeing has presented throughout this case, and that is the issue of whether evidence that the commission has alleged supports their claim is based on admissible evidence. In the briefs, the commission throws a whole lot at the Court in terms of what Ms. Miles alleged happened. The fact remains that there is no admissible evidence of a lot of that conduct. And I'm not going to go through each incident unless the Court would like me to do so because it's addressed in the papers. Just pick one. Just pick one that you say is not admissible evidence. Well, for instance, with the tools, with her tools being messed with, the – she did allege that her tools were messed with, but – They're not admissible? She said, here's my tools that were messed with. Well, I mean, for purposes of summary judgment, we'll concede that her testimony, unless the testimony is based on hearsay or things like that, could create a fact issue. Her tools, they were messed with. That's not hearsay. Well, here's the issue. They are. They're messed with.  That is not hearsay. That is not hearsay. What part isn't admissible? Well, in terms of who did it, there is no admissible evidence in terms of who supposedly was responsible for messing with the tools. She says she believes John Bird messed with the tools. There is no evidence other than her speculation to support that John Bird messed with them other than she had heard from somebody that John Bird had been working with the tools earlier in the day. Well, how about this? Okay. I'm on page 183 of the deposition. That's page 23 of the excerpts. She's been questioned about this particularly egregious episode about the toolbox, and she's earlier said, well, I think it was John Bird and Manny Cervantes. And then later on, but we're still discussing the same thing, and would you agree with me that you got upset over this and handled it wrong? And you said yes. And you also said that John went to Kevin and they came out screaming. Is that correct? Yes. What do you mean by screaming? Answer, this is now Ms. Miles, they were hollering at me that it wasn't my fucking toolbox. Did they use the word fucking? Yes. He asked, well, you know, that's not hearsay. I don't think so. That is to say it's not for the truth of what they said, but it's going to be an excited utterance or so on. That sounds to me as though there's some evidence that maybe they thought they were in trouble for messing with their toolbox. That sounds like admissible evidence to me. And I don't disagree that that evidence is admissible for purposes of that conversation. Boeing doesn't dispute that after Ms. Miles complained that somebody was messing with their tools, Kevin Neunemaker went to John Bird and said, are you messing with their tools? And he flat out denied it. So it was in the context of that conversation when Kevin Neunemaker was investigating that John Bird denied it. And, yes, there was, there are allegations. But then he comes out and says, I didn't do it. He doesn't say that. He says, it wasn't your fucking toolbox. Well. That's a different thing from saying, hey, I didn't touch it. Well, right. But she has no evidence that he did. We don't dispute that he said that. And there's a big issue there. She's got evidence that somebody messed with it and it was part of a pattern of other, other. Well, in those two facts, why wouldn't that be sufficient to permit a jury to make the reasonable inference that that admission means that he was the one who did it, but the best defense he can come up with is, well, it's not her toolbox anyway? Well, and to a certain extent, I think that gets at a bigger issue, is it doesn't to a certain extent. I mean, although we think the evidence is that there's not enough evidence to give a past summary judgment on that issue, but it really doesn't matter to a large extent, because it wasn't her toolbox. Despite the EEOC's argument, the evidence is clear that they, she did not have responsibility for those tools. She shared the toolbox with everybody on her team. The problem with your argument is that our case law says that if as a result of, and assuming for the sake of my hypothetical, there is a hostile work environment here, and if it makes her doing her job harder, it doesn't matter whether the toolbox belongs to her or not. If she can show a nexus between the hostility in the work environment and the fact that it resulted in somebody messing with the tools in such a way that it made it harder for her to do her job, under Ninth Circuit case law, doesn't she at least get to a jury on that issue? Well, I think you've filled in all the pieces perhaps, but, and I could be wrong about this because I'm fallible. I don't remember seeing, and I have been with this case for a lot longer than even Mr. Tucker, any evidence in the record that this actually made her work harder, other than she was bothered by it. There's absolutely no evidence. She was never reprimanded. She was never unable to complete a task. It's common sense that if you're working in an environment where it's obviously tense and difficult, this is clear. Yes. And tense and difficult in part because of her gender. That's pretty clear. And you come in, and the toolbox that you use, whether it's yours in the sense of your own personal property or whether it's yours only in the sense that that's the And if somebody did that because they're trying to make your life more difficult, which is a point to be proved, that sounds as though it's made her life more difficult to work. I mean, I don't understand how you can say otherwise. Well, because this whole issue about the tools being messed with, Ms. Miles admitted in her deposition that tools went missing all the time. Yeah. It wasn't an and. That's part of her complaint. And she, no, because she admitted that not just her tools went missing all the time, but tools from other toolboxes went missing. Well, yes, but this particular episode is not an episode of tools simply being messed up. I can read it to you, what she says. And maybe I'm confused, because there's kind of two incidents. There's one with the tools just kind of being missing and being broken, and there's another incident where somebody, quote, unquote, trashed the tool cart. We're talking about trashing the toolbox. Okay. And I was talking about the other incident. But this is trashing the toolbox. What I read to you when Byrd comes out and says, it's not your bleeping. I mean, it's all connected to the deposition testimony about the toolbox having been messed with. And I apologize, because we, you know, when you think something, you hear what you want to hear, you confirm that. But that we've always referred to as the tool cart incident. So that's why I was a little confused. In terms of that incident, there's a couple issues. One, there we still contend that there's no evidence that there's no admissible evidence that Mr. Byrd, not even enough to get past summary judgment, that Mr. Byrd was responsible for that. In terms of that tool cart. Kennedy, you're saying that Byrd's statement coming out yelling, it's not your bleeping toolbox, are you saying that is or is not admissible? Well, I'm not actually sure. It wouldn't be admissible because he's not a representative vote. So it would be hearsay to prove. Sounds like an excited utterance to me. Well, okay. The very words he's using sound pretty excited. Taking that, I don't think that that even establishes a question of whether he's admitting that he did it. I think he could be. Oh, he clearly doesn't admit it. He denies it. Right. And he could be saying. It doesn't mean that his denial is true. No, it doesn't mean his denial is true. But given that there was no, there was nobody who saw what happened and he denied it and that what was, even if, even if Mr. Byrd had done it, what was Boeing supposed to do other than what Mr. Nunemaker did, which is pull the whole crew together and say, knock it off, basically. And Ms. Miles admits in her deposition that after that meeting, things got better. The tool cart wasn't trashed again. Her tools didn't go missing again. There was. You know, that's not true. I'm reading from page 177. Your brief says it was never trashed again. It may be trashed. Your brief says it was the only incident. But I'm reading from the deposition testimony. I'm now on page 177. It's ER 22. Question. Has it ever been trashed like that since? No. Has it ever been trashed at all since? Answer. It's been filled with trash, trash thrown in. Now, your brief says it was never trashed again. She says it was never trashed like that again. Well, and part of this, part of this kind of goes to our whole overall argument that, I mean, as Ancalli states, when you're looking at a hostile work environment case, you have to consider the context in which these acts are occurring. This was a manufacturing floor. People, I mean, it was busy. It's a busy manufacturing floor. People are working on many different things. It's a big hanger. So the one incident where it clear, it was fairly clear, or at least we'll concede for purposes of summary judgment, that there had been something deliberately done to it, to mess with it. The other incidents, even if you take Ms. Miles' testimony that there had been trash on it. Trash not on it. Trash on it. In it. As in, well, and maybe this is because you obviously don't have a diagram of what the tool cart is. The tool cart is basically like a three-layer thing where there's shelves and then the top is kind of, it's an open receptacle. So, you know, trash being put on it, yeah, people would go by and, you know, if they had an empty cup, coffee cup, they would put a coffee cup on it, but they would do that with everybody. It's, she testifies, it's been filled with trash. Well, and, you know, for purposes of summary judgment, fine, we'll concede that. But once again, there's a couple issues there. It was not, it was not only her tool cart. There were several people who used that tool cart. In fact, Din Lu, who was a male coworker, did exactly the same job, used exactly the same tools, used exactly the same tool cart as her every single day. So there's. And somebody was trying to mess with the tool cart that she used. And she used. I'm sorry. Let me ask the question. If somebody is trying to make her life difficult. Yes. And one of the mechanisms by which they're trying to make her life difficult is to mess with the tools that she uses. They're obviously going to target that cart because she uses it, even though it may also be used by somebody else, right? Yes. But there's also, there's also, I mean, and I don't want to say that there was any discriminatory animus on behalf of anybody, because, one, I don't think there's evidence of that, and, two, my client would not be happy with me. But Mr. Lu is a minority. Who's to say that they weren't directing whatever animus they had at him? I mean, it's, and I think the pure speculation to say that this happened because of Ms. Miles, there's not enough to. You know, when you look at the entire evidence, you could say, and this sounds like a pretty good jury argument, that it's pure speculation, but here we are on summary judgment. She's got lots of evidence of enormous hostility toward her by some of her fellow coworkers based on her gender. And to say that it's pure speculation that this toolbox that she used was trashed because of some reason unrelated to her gender, perhaps discrimination against this Asian man, you can make the argument to the jury. Yes, I could, but for purposes of summary judgment, I think perhaps even a more important issue, because maybe less subject to factual dispute, is that, I mean, we don't necessarily dispute that a lot of these events that Ms. Miles alleged occurred occurred. We simply don't know. But what's clearer in the record, we believe, is what she told Boeing Management about. If somebody is subjected to a hostile work environment and they do nothing to tell management Now, for purposes of our argument here today, is Mr. Nunnemaker, Kevin, I guess his first name is, is he management? We've never argued that her supervisors were not management. There were people that she complained to. Sure. Yeah. Rather than you saying we never argued. For purposes of our decision, we may assume that her complaints to Mr. Nunnemaker are complaints to management. Yes.  Yes. There are complaints that we address in our briefs to people who she alleges were supervisors who were not supervisors, who were not management. But for purposes of here today, Mr. Nunnemaker was management, as was Mr. Luthart, who was her supervisor subsequently. Her testimony, Ms. Miles' testimony was that she complained to Mr. Nunnemaker about slander and about obnoxiousness and about, you know, things like that. Although we concede that a Title VII plaintiff does not have to use any magic words saying sexual harassment, she has to do more than that. I mean, she, she, I don't know how Mr. Nunnemaker was supposed to be on notice that she thought she was being subject to some sort of sexual harassment because she was complaining about slander and obnoxiousness. And I will be the first to concede, Boeing is my client, but there's a lot of obnoxiousness running around that place. I mean, these are, these are mechanics. The women as well as the men, everybody is kind of rough and tumble. She didn't use the words harassment. She didn't use the words sexual harassment. The one time that she alleges that she complained to Mr. Hatter that the guys thought she was a bitch and somehow he was supposed to know that she meant that they had been calling her a bitch, well, why didn't she say that? If they had indeed been referring to her as that, that should have been her complaint. Her thinking that or her telling Mr. Hatter that she thought that, she didn't, and in the context of that complaint, she didn't say here's why I think they think that I am a bitch. She just said I think they think that of me without any support whatsoever. She wasn't even complaining that there was any conduct to be addressed. So, I mean, in terms of when, when she put Boeing on notice that there was something that rose to the level, well, first of all, when she put Boeing on notice of anything, they took action. Even the conduct that wasn't based on, there's no indication that it was based on her sex, Boeing still investigated and they took steps. You know, no indication that it's based on her sex. You have to be pretty blind to what goes on in the workplace and blind to what our society can do to, at summary judgment say, there's so little indication that this was based on sex, that this can't even go to a jury. Well, I, I would respectfully disagree, simply because what that does is that essentially turns Title VII into giving preferential treatment to minorities and women. Well, that's exactly what the statute does. I'm a white male, if I go onto that factory floor and they just beat the daylights out of me because they hate my guts, good luck for me suing under Title VII. Well, and my brother makes that argument to me all the time. But, but I, I respectfully disagree with that. I mean, you have to be discriminated against because you're a woman. And like I've said, this was a, but merely being a woman doesn't ab initio mean that any treatment  is appropriate. I think you and I read the statute in exactly the same way. I, I, I, I mean, we've never said that Ms. Miles did not, she clearly did not have the perfect working relationship with some of her coworkers. We will concede that all day long. But... What about people calling her a man-hater and a lesbian? Isn't that the sex-based? Well, and that may be the case, but she never reported that to Boeing management. So there are a lot of incidents that may, that may have made up a hostile work environment and may have made up a sexually based hostile work environment. But Boeing, I mean the law is clear that because these were coworkers, Boeing can't be held liable for the conduct of which it had no knowledge. And, and it's not as if Ms. Miles didn't complain about things. Ms. Miles went to HR several times and complained about things. So the fact that she was, there were things that were happening that she didn't complain about, there was no way for Boeing to be on notice of that. And especially given that she, they believed that she was comfortable coming to human resources. There was no reason for them to think that there was something that she was not telling them because she had told them about things. But I do, I do just think it's, because there's so many factual allegations in, in the papers, I think it's just to kind of finish up. It's important to keep in mind the standard of liability under Title VII for a company and the conduct at issue here. I mean, what, what the EEOC is essentially trying to do is say there was all this conduct over here and she complained about a little bit of it. So therefore, Boeing should have somehow known about all of it and combined all of that to conclude that it was sex-based harassment. I mean, and I just don't think that there's evidence, even for purposes of summary judgment, which we concede, you have to look at the evidence, most favorable to the plaintiffs, there's not enough evidence to get, for a reasonable jury to find, that Boeing knew that she was subject to sex-based harassment and didn't do anything to resolve it. When they learned about the complaints, they took action. They didn't immediately terminate everyone. But under Swenson, that's clearly not what they're required to do. They're just required to take appropriate remedial action. And just one point on that. Mr. Tucker said that after Ms. Miles complained about Mr. Blau's conduct and he was reprimanded, that he continued the conduct. He may have, but the record is clear that she never, she never told anybody at Boeing that he continued the conduct. So once again, she's trying, the EEOC is trying to hold liable for Boeing, hold Boeing liable for conduct about which it had no knowledge. And that's just not the standard under Title VII. I'd like to say one thing, and that is, I'm not sure I'm pronouncing the name correctly. Is it Tibor? Tibor, yes. That's how I pronounce his name? Yes. Now he has signed this brief. Yes. On page 10 of this brief, about in the middle, the brief that he signed says, however, the undisputed record evidence based on Miles' own testimony established that the tool cart was, quote, trashed only once on May 2001, and then cited the deposition pages that we've actually been focusing on. Yes. That is not her testimony. Her testimony is that it was trashed like that only once.  I won't go over other things in the brief, but I much appreciate a brief that recounts accurately what's in the evidence. And this is not accurate. I won't say anything else about other things in the brief. But if you can communicate that back to Mr. Nagy, that that is not an accurate rendition of what's in the deposition that he cites. I will keep that in mind. Thank you.  On that similar theme, I'd like to correct the last factual assertion that Ms. Rokish made regarding the case, saying that Todd Blow never complained again about any harassment. Reading from ER 73, my statement regarding an incident between Todd Blow and myself on Thursday, October 10, 2002, on page 7 of this document, which is ER 78, I believe this is a continuation of the retaliation that I continue to receive from Todd by his not talking, always cussing loudly when he's around me, and is described as his statement. She goes into a specific instance there when she's been mistreating her again. That's October 2002. That's a year and a half after his initial chastising by HR, which is, again, after the fact that she'd been he'd been talked to by Nonemaker. The key issue that I want to close with, if I could, Your Honors, is that there is plenty of evidence that supports the Commission's case on all the key elements and most particularly on the notice issue. This Court's requirement is that employers act reasonably under the circumstances and the circumstances of this case involve Boeing, knowing that they have, amongst other problems in this workplace, a serial sexual harasser in the guise of Manny Cervantes. They are receiving daily comments from Miles that she's being – that the guys call her names, that they think she's a bitch. She's being called a bitch. There's testimony that this isn't something she's making up. In that circumstance, a reasonable jury could certainly conclude that Boeing just needed to ask a question. That would have been what a reasonable employer would have done under the circumstances instead of waiting four years until she put it in writing and then still not doing enough and still letting her get subjected to workplace harassment. Is there no further questions, Your Honors? Thank you. Thank you very much. I thank both sides for their argument in EEOC v. Boeing Company. We'll take a ten-minute break and then we'll resume and hear the rest of the panel.
judges: W. Fletcher, Tallman, Bertelsman